So the first argument case this morning is number 21-1538, Apollo Petroleum Solutions v. Nano Gas Technologies. Mr. Garner. May it please the Court. There are three things I would like to focus on in this argument today, because I think they're most important to this appeal. First thing is that in the prior dealings between Mr. Rowe and Nano Gas, there were two different definitions of the technology. First definition was in the collaboration agreement between Mr. Rowe and Nano Gas, which didn't really define any inventions but required something to have already been invented and tested by Mr. Rowe and that such things could be assigned. Second definition was set forth by the arbitrator in the permanent injunction in the arbitration decision at page 7. And they're two different complete things. So the second definition appears to confusingly try to define an invention, whereas the first one has nothing to do with defining an invention other than something that Mr. Rowe had invented and tested at the time he signed the agreement. In Nano Gas' reply in its motion to dismiss, they repeatedly confuse these two definitions of the technology as being the same. And they do this at least eight times throughout the reply. And they were very successful in misleading and confusing the district court to believing that they were the same definition. And ultimately the court made his ruling that the 046 patent, practicing the 046 patent by Apollo, would be in violation of the permanent injunction based on this misunderstanding, as you can understand from the court's comments at pages 2-3 and 6-8. The question here is more of the relationship between the parties than it is about the technology or how the technology is defined, correct? I think that's a secondary issue, really. I think what is more important are the things I would like to talk about. I think this confusion about the technology is very important. I think the second thing that's very important is that Assign or Estoppel clearly does not apply in this case. Mr. Rowe never assigned a patent or a patent application to Nano Gas. He had nothing to do with the patent process. He vaguely assigned some technology that he had already invented and tested.  They entirely controlled the entire patenting process. They excluded Mr. Rowe from this process intentionally. He never signed a declaration. He never reviewed the patent application of the 186 patent before it was filed. So he had nothing to do with this patent process. I believe the recent Minerva case by the Supreme Court very clearly makes that Assign or Estoppel does not apply in this matter. That's the second point. Third point is that in the defendant's reply, again, in the district court on his motion to dismiss, they repeatedly mischaracterized... But the bigger problem here is the injunction, right? It's part of it. But again, I believe the district court is very confused about this injunction, both as to the meaning of the technology. And secondly, the third point I want to make is that Nano Gas has... Did you make that argument below? Yes. I thought the argument below was really focused on whether there was privity between Apollo and Mr. Rowe. No, we actually made all three arguments, Your Honor. And then on appeal, it feels like you've shifted the focus of your arguments. That's what Nano Gas argues, but that's not what happened, Your Honor. If you look at the appendix in Apollo's opposition to the motion to dismiss, page 152, 153, they very clearly say that Assign or Estoppel does not apply. And at page 154 of the appendix, they very clearly say the claims of the 046 patent do not read on the technology as defined. Is that in the argument section of your opposition to dismiss? Because I understand that your argument section of your opposition to dismiss begins after page A154. This was the background section. Yeah, but we've put it as a fact in there. So at page 154, we very clearly say that the claims of the 046 patent do not read on the technology as defined. On page 155, though, it seems like you almost take it back while you acknowledge that the 046 may pertain to the technology as defined in the arbitration decision. We did say may pertain, and we said it may relate, but at the end of the day... Well, the injunction says you're not allowed to do anything, or Mr. Rowe's not allowed to do anything that relates to the technology as defined in the arbitration decision. Understood, but again, as we've stated, we've argued very clearly that the claims of the 046 patent do not read on the technology and as... You didn't argue that in the argument section of your opposition to dismiss. But we certainly raise it as a fact in our... What did the argument section of your opposition to dismiss actually argue? It mostly argues about whether the privity, but nonetheless, we have addressed all three of these issues. The judge at the district court focuses only on the privity, and he assumes that we've conceded the other two points, but we didn't. We very clearly argued that a signer's problem does not apply and that the claims of the 046 patent do not read on the technology as defined in the permanent injunction. Counsel, why don't you... Let's take one issue at a time. Address the injunction issue. Okay, so there's two definitions of technology. One is in the collaboration agreement. It doesn't define an invention. It's just something that Mr... It's a technology Mr. Rowe had already invented and tested at the time he signed the agreement. And then based on that and additional evidence presented in the arbitration hearing, the arbitrator awarded that invention to NanoGas. They didn't present any other evidence regarding any other invention that Mr. Rowe had invented and tested at the time he signed the agreement. So the arbitrator did not award any other thing. Now, in the permanent injunction, in the arbitration decision, that language was proposed by NanoGas, and it makes no sense to the person who's working in the skill yard. It doesn't have a clear meaning. Mr. Rowe's invention is about stabilizing a gas-infused liquid. It has nothing to do with dispersing or dissolving gas into a liquid. And that's what the definition that NanoGas proposed... As I understand the nature of your complaint, you're saying you need to invalidate these two NanoGas patents, right? That's right. Because these NanoGas patents dominate your 046 patents. You have to be very clear about that, that the claims of the 186 patent and the 988 patent would dominate practice... If those NanoGas patents, which were essentially assigned to NanoGas, as the arbitrator found in the arbitrator decision, those NanoGas patents relate to the technology. Why wouldn't necessarily the 046 patent, also by the logic of your complaint, also relate to that same technology, since you are claiming and alleging and acknowledging and admitting that the NanoGas patents dominate the 046 patent? So infringement is one thing. That's patent claims, which we know the meaning of. You have a Markman hearing if there's confusion about what it means. This permanent injunction, we don't know what it means. We argued from day one that that meaning that they defined makes no sense. We don't understand what it means. We argued this to the Seventh Circuit and to the district court that affirmed that judgment. We've argued that from day one. We don't understand what this means. So how can... There's no legal definition of what this definition means. It doesn't make sense based on plain meaning to the person of ordinary skill in the art. We have argued this consistently from the arbitration to the district court affirming the judgment to the Seventh Circuit affirming the judgment. Even though the president never said what this means. Is it your position that you cannot practice the 046 patent because to do so would infringe the NanoGas patents? Yes. That's what we've argued. That was our complaint. Have you done any preparation towards making any product directed to the 046 patent? No. As we say... You haven't. No. Has NanoGas done anything to say, hey, we have these NanoGas patents. You better not make one move towards doing anything. Well, NanoGas has tried to take over inventions, but they haven't done that, no. Your Honor. Then how is there any live case or controversy between these two parties relating to these NanoGas patents? They haven't taken any moves, any affirmative steps towards their company relating to these patents. You haven't even begun to do anything in relation to practicing the 046, which you're claiming is dominated by these patents. So you're just two companies that happen to be existing where you don't have any infringing product, and you haven't even begun to make anything that could arguably be accused of infringing a product. So I don't understand why there's even a case or controversy here. Okay, so Mr. Rowe was hired by Powell to work on his gas infusion technology. And so they want to practice his invention, and they own this 046 patent, which is superior to the patents that NanoGas owns. But Mr. Rowe doesn't want to get close to infringing these patents because it was very clear through the arbitration hearing that his second invention, the 046 patent, practicing would read on the claims. We know from the arbitration hearing, and they know, that the claims of the patents that NanoGas owns, the 186, 988 patent, dominate practice of the 046 patent invention. So we know this. They know this. We know this. And they've made clear that you cannot do this or we're going to sue you. Nonetheless. Nonetheless. Did they say that?  No, I don't have that, Your Honor. Did they provide that that's what's going to happen? They've indicated. How did they indicate? Excuse me. How did they indicate? Well, they keep coming after Mr. Rowe's inventions. Anytime he does anything having to do with gas infusion, they're claiming that they own it. So they're very carefully monitoring everything he does. You know, in terms of improvement. He hasn't actually made anything that does it because he wants to avoid infringement. But they're getting ready to if we can get this patent invalidated. They're ready to move forward on it, Your Honor. Because the 046 patent is an improvement over the other. There is a case for controversy, as we've stated. I mean, I believe it's very clear to the parties that nanogas is monitoring everything Mr. Rowe and Apollo are doing regarding this gas infusion. And if they have wind that he's infringing the claims of that patent, then they're going to bring a patent infringement lawsuit. Okay. Let's hear from the other side and we'll save you rebuttal time. Thank you.  Thank you, Your Honor. There is a primary point, one primary point that I'd like to emphasize. If nanogas threatened Apollo with infringement, if Apollo begins to do, begins to take any steps to start practicing the 046 patent?  Your Honor. Why didn't your motion dismiss assert a theory that there's no life, case, or controversy between these two companies? We actually mentioned that in the beginning of our brief as an introduction. I understand you mentioned it, but why didn't you assert it as an alternative theory? Simply because we thought it would be easier to prove as an evidentiary matter on a 12B1 motion, the other points, because the other points were based on specific concessions by Apollo, whereas this issue potentially would go down a rabbit hole in trying to look through, you know, all the past correspondence to see if there was any statement that could arguably be construed as a threat. We don't think that existed. We anticipated they would argue that is the case, and we thought it would be a messier motion. We thought this would be a cleaner motion because this motion was based on concessions. For example, the concession that the 046 patent relates to the technology, that came right out of Apollo's own papers. We thought that would be a neat and clean motion. But we didn't, yeah, that's why we didn't raise the other 12B1 issue. So, the primary point from the NanoGuess perspective, Your Honors, is that the issues that Apollo now raises on appeal are issues that Apollo never raised as contested matters before the district court, and they're not appropriate issues, therefore, to bring up now on appeal. Apollo cannot reasonably contend that the district court erred by failing to adopt... What are the issues that are new on appeal? The argument he's making about the definition within the injunction order? Correct, Your Honor. That is what I would say is a subset of one of the three primary positions. Here are the three primary positions, I believe, that Apollo takes on appeal. Number one, the injunction does not apply because the 046 patent is not the technology. It does not relate to the technology. And that's where the definition argument comes in. Two is the injunction doesn't apply because it is fatally ambiguous. They make this argument in the briefs, and you heard it from Mr. Carrier this morning. The position is they don't know what the injunction means, what the meets and bounds are, so the court can't enforce it. And the third point is the Assign or Estoppel point. The Assign or Estoppel defense was based on two points. One is that Estoppel applied to Rowe, the inventor. And the second point was Estoppel extended from Rowe to Apollo through the doctrine of privity. In the district court, Apollo argued only the second point, the privity piece, did not address in any way a position that Mr. Rowe himself was not bound by Assign or Estoppel. So on appeal, Apollo switches tacks and addresses the first issue. And our position is that it's not an appropriate appeal issue because Apollo never presented it below, and the district court never had an opportunity to address it. So this issue with arguing one point below or contesting certain issues below and conceding others and then switching course on appeal, that problem runs through each of these three primary appeal issues that I mentioned. On the first one, that the 046, Apollo now argues that the 046 does not relate to the technology and is therefore not, the practice of the 046 is not enjoined. That is an issue that Apollo did not argue below. It didn't dispute this issue. And on the contrary, when Nanogas took the position in its motion that the 046 patent practices the technology and therefore is covered by the umbrella of the injunction, Apollo did not contest that point. On the contrary, it conceded that there was a relationship that the 046 relates to the technology, but it argued that nonetheless the injunction didn't apply to Apollo for other reasons. Primarily they talk about the fact that the injunction issued after Rowe, the inventor, assigned the patent to Apollo. So Apollo's position in essence in the district court was, Judge, we already had the patent before the injunction issued. The transfer took place before the injunction. Therefore, we're not covered by the injunction. That was the argument below. On the second primary issue that Apollo argues that the injunction is fatally ambiguous, Apollo made no representation whatsoever to that effect before the district court. It never argued the clarity of the injunction. On the contrary, it made statements in its brief that clearly led the court to believe that Rowe fully understood the scope of the injunction. For example, the brief talks about how Rowe is honoring the injunction, is complying with the injunction, by avoiding work on the 046 patent and on the technology. There was no question that Apollo and Rowe knew, or at least they gave the impression to everybody that they knew what the injunction meant and they were complying with it. Now on appeal, they take a completely different position and say, how can we know what the injunction means? Again, the district court could not have erred in failing to adopt an argument that Apollo never presented to it and, in fact, appeared very clearly to concede the issue. The other problem with attacking the injunction is that that's a settled issue. It's too late at this point for Apollo to get into the details of the definitions of the injunction, what it means, how clear it is. There was an opportunity to litigate that when the arbitration award was being litigated and with the district court, which confirmed the arbitration award, there was an opportunity, of course, to appeal but with the district court decision affirming the arbitration award, there was no appeal. So that is a settled matter and now is not the place, now is not the time or place for Apollo to argue about the scope of the injunction. That ship has sailed. On the Assign or Estoppel issue, again, that is an issue that Apollo did not raise below. There were two components, as I said before. One is Rowe, the inventor, is bound by the Estoppel and the other, Apollo is bound by the Estoppel through privity. Apollo only addressed the privity issue below and never contested the fact that Rowe himself was bound by Estoppel. On appeal, the argument is flipped and Apollo now ignores the privity piece and focuses on an argument that Rowe himself is not stopped for various reasons that were not raised below. And again, the district court cannot have erred in failing to adopt an argument that Apollo never presented to it. That cannot be the basis for error. That cannot be the basis for an appeal. I can close this up and I don't need to use all my time unless there are questions. But it is one thing to argue a point when your argument is weak and it is one thing to push the limits of reasonable advocacy by taking some liberties with the arguments. And that is appropriate in an appellate context when the arguments have been preserved and the issue is open. What we have here is a situation where these issues are no longer open. They were not contested below. Apollo didn't raise them, contest them, or give the district court any opportunity to address these issues and now is trying to raise these belatedly in the appeal. All of these arguments, the three core arguments that we've been talking about today, all are foreclosed and are not the proper basis for an appeal. Apollo had numerous opportunities to make these arguments, to preserve the record, to tell the judge all the points that it's making to the appellate court it had an opportunity to tell the district court and never did. And that is why, in NanoGas's view, not only should this court affirm the district court, but also should award sanctions against Apollo for raising issues and for basing its appeal entirely on foreclosed issues. Thank you. Anything else, Mr. Rice? Thank you, Mr. Rice. Mr. Carey. Thank you, Your Honor. First of all, again, I would emphasize that Apollo did not concede any of these issues in its opposition to the motion to dismiss. Very clearly, it said, sign or stop does not apply. Very clearly says the claims of the 046 patent do not read on permanent injunction. These statements are in the opposition. Now, when Apollo filed this reply, they changed their strategy. Now they confuse the meaning of technology. They conflate the two totally different definitions. And they mischaracterized what Apollo's arguments were below. They say that the only issue here is whether privity applies. And they also say, specifically, that Apollo admits that the 046 patent uses, quote unquote, uses the technology as defined in a permanent injunction. Apollo absolutely never said this. They may have said related and may have said pertain to, but also very clearly, very said, the claims of the 046 patent do not read on the permanent injunction language. They very clearly said this in opposition. Now, the judge at the district court accepted these mischaracterizations and he clearly buys into it. He says that Apollo admits that the 046 patent uses the technology in the permanent injunction. We did not say this. Absolutely not. Apollo never said this. And recognizing... Doesn't the injunction order say relating to? I mean, you know, Roe is permanently enjoined from engaging in... Yeah, but we all know what that means. Relating to, and then it provides... It does say that, but it's a very unclear definition, as we've explained. But beyond that... But you've acknowledged that the 046 relates to. Yeah, but just as a patent thing, even though a patent has been granted and presumed valid, that doesn't mean you know what it means. If the claims have weird terminology, there has to be a markment here. There's no such thing here. And, in fact, we did appeal this issue. We appealed it to the Seventh Circuit. They affirmed the arbitration decision, even though we said it doesn't make any sense. We said this is only going to lead to further litigation, but they affirmed it, but they didn't define what this means. Did you make this argument below? Yes. Well, not on this particular motion. We appealed it. You can't understand the claims in the patents because they're weird? We didn't argue that. Again, the initial motion was very short. So, you know, we just addressed. We denied, denied, denied the three issues. What's the answer to my question? Did we raise the specific, the whole thing about the meaning? The weird argument you're making now. No, we didn't make that specific argument, but we did say that the claims of the 046 patent do not read on the permanent injunction language. And, also, I think it's very important that, after Powell recognized from the reply that Daniel Guest filed that they were changing the strategy, they're mischaracterizing what the technology means, and they're mischaracterizing what we had argued, we filed a motion to file a survey reply saying, they're making new arguments, they've changed their arguments, we need to address this because the court had already said there's not going to be an oral hearing. But the judge refused. He says it's not necessary. I have no idea why the judge felt that it was not necessary. Clearly, it was necessary, but he didn't give us the opportunity. Before you sit down, we do have a motion for sanctions. Can you address that? Yeah, I think it's outrageous. Clearly, we did everything very properly here. I think this appeal should overturn this judgment. There's no reason for sanctions here, for the exact reasons that we're arguing on appeal here. We didn't concede anything. You know, they say we conceded all these things. We didn't. If you read the express language that we wrote in our opposition, we don't concede any of these things. That's not true. It's just not true. I mean, as a practical matter, I just can't understand why the judge, the district court, wouldn't give us an opportunity for a survey reply. I mean, if he says there's not going to be an oral hearing, and we say they've added new arguments, they've changed the arguments, why wouldn't he let us have an opportunity? We raised specifically in our motion for survey reply that they've changed the arguments about a time to stop it, they changed the arguments about the permanent injunction, and they changed the arguments about privity, and that we needed to address these. We specifically said this in our motion for a survey reply. I'm done. My time's up. Thank you, Your Honors. Questions? Thank you. Thank you both. The case is taken under submission.